OPINION
{¶ 1} Defendant-appellant, Adam Huysman, appeals the decision of the Warren County Court of Common Pleas overruling his motion to suppress his confession.
 {¶ 2} Appellant was indicted in March 2005 on one count of theft in violation of R.C. 2913.02(A)(2). The state alleged that between August and November 2004, while he was employed as a teller by US Bank in Loveland, Ohio, appellant received several cash deposits from three different businesses and converted some of the money for his own use, totaling $3,175.45. Appellant moved to suppress statements he made to police during a criminal investigation. The transcript of appellant's questioning and a hearing on the motion revealed the following facts:
 {¶ 3} Susan Wurzelbacher, a corporate security investigator for US Bank, investigated the missing funds from the businesses' deposits. After the investigation centered on appellant, Wurzelbacher contacted Detective Ron Robinson of the Warren County Sheriff's Office and turned the investigation over to him. The detective called appellant and asked him to come to his office to talk about an incident at US Bank during appellant's employment there. Appellant, who worked two jobs, agreed to meet after the detective promised he would make it to work on time after the interview. The interview took place in a conference room at a fire station and lasted about 45 minutes. Present were the detective and Wurzelbacher. Because of her knowledge of the case and her familiarity with bank procedures and terminology, Wurzelbacher conducted the first part of the interview. It is undisputed that appellant was never read his Miranda rights.
 {¶ 4} Appellant denied any involvement in the missing funds for most of the interview. During that time, he made the following statements with regard to an attorney: "I guess at this point I need a lawyer[,]" "I think I would need a lawyer. * * * I think I need to consult with a lawyer[,]" and "At this point, do I need one?" Eventually, appellant stated "I need a lawyer. * * * This is over. * * * Thank you." At that point, the detective stated "You heard him. It's over at 10:30[,]" and turned off the recorder. However, while the recorder was off, appellant and the detective continued talking.
 {¶ 5} Appellant testified that while the recorder was off, (1) he stood up but that nobody moved; (2) the detective then told him he would spend the weekend in jail, would be charged with five counts, and that a bond would be set for each count at no less than $100,000; and (3) after that and believing he was going to jail, appellant immediately sat down. Appellant admitted the detective did not say he would arrest appellant right then. The detective testified that after the recorder was off, appellant kept talking; the detective told him he had nothing to offer as appellant had had his chance; but appellant wanted to talk to the detective who turned the recorder back on with appellant's permission. The detective denied threatening appellant in any way or telling him a bond would be set at $100,000 on each count. The detective did testify, however, that because each of the three businesses had filed a police report, he explained to appellant he could file one charge "or let it go to five separate charges within two counties" (as two businesses were located in Hamilton County and one was in Warren County).
 {¶ 6} After the recorder was turned back on, the detective stated that while it was off, he and appellant had discussed appellant's options. The detective explained that "he's looking at five felony charges. I'm willing to file one felony theft * * * through the US Bank in Warren County." After appellant asked about restitution, the detective explained to him what he thought might happen but made it clear it was the detective's opinion, and that he "was not makin[g] any threats * * * or any promises" or telling appellant "what the judge is gonna do."
 {¶ 7} The detective also stated: "I'm not reading your rights to you. * * * Because, number one, I'm not going to arrest you. Okay. You're not under arrest. You're free to go. * * * You could get up and walk outta here right now. * * * I don't have to read your rights since you're free to walk right out of that door." Then, when asked by appellant if he "was free to walk out the door * * * right now," the detective replied "Absolutely." At that point, appellant confessed to taking some of the money deposited by two of the businesses, but denied any involvement in the missing funds of the third business. The interview then ended, and appellant left without any hindrance and went to work.
 {¶ 8} Following the suppression hearing and upon listening to a tape recording of appellant's questioning by the detective and Wurzelbacher, the trial court denied the motion. The trial court found that (1) prior to the interview, appellant was assured he would not be arrested regardless of what happened; (2) likewise, appellant was advised, almost immediately at the beginning of the interview, that he would not be going to jail; (3) appellant was again told just before his confession that he would not be going to jail; and (4) there were no threats of arrest or jail made during the interview; rather, the detective "maintained a calm and non-threatening tone of voice and speech pattern throughout." The trial court further found that:
 {¶ 9} "There were no * * * improper promises of any kind. Any references to counsel were not made as unambiguous and unequivocal assertions of wanting a lawyer present until just before the first portion of the interview ended. None of the words or actions by the [detective] caused [appellant's] free will to be overborne or otherwise resulted in a coerced confession. The detective merely stated and restated that he did not believe [appellant] and this was the one chance [appellant] had to avoid multiple felony charges filed against him. This did not render the confession involuntary. The Court concludes [appellant's] statements were knowingly, intelligently and voluntarily given."
 {¶ 10} Appellant pled no contest to one count of theft and was sentenced to two years of community control and ordered to pay $3,175.45 in restitution. This appeal follows.
 {¶ 11} In a single assignment of error, appellant challenges the denial of his motion to suppress. Specifically, appellant argues that (1) he was subject to custodial interrogation from the moment the interview started and thus, the detective was required to read him his Miranda rights before he and Wurzelbacher began questioning him; (2) his Miranda rights were violated when the detective failed to stop questioning him once appellant made "several comments that he needed an attorney;" (3) appellant did not initiate further interrogation once the recorder was off; rather, he only agreed to resume the interview; and (4) his confession was involuntary and coerced by the detective's threats and improper inducements (promises of more lenient treatment).
 {¶ 12} When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the weight of the evidence and the credibility of witnesses.State v. Fanning (1982), 1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings if they are supported by competent, credible evidence, State v. McNamara (1997),124 Ohio App.3d 706, 710, and relies upon the trial court's ability to assess the credibility of witnesses. State v. Anderson
(1995), 100 Ohio App.3d 688, 691. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standards to the facts. Id.
 {¶ 13} We first consider whether appellant was in custody forMiranda purposes. It is well-established that the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona
(1966), 384 U.S. 436, 444, 86 S.Ct. 1602. If a suspect in a criminal investigation invokes his right to counsel at any time during a custodial interrogation, the police must cease all questioning until an attorney has been made available or until the suspect himself initiates further communication, exchanges, or conversations with the police. Edwards v. Arizona (1981),451 U.S. 477, 484-485, 101 S.Ct. 1880.
 {¶ 14} Thus, Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody. Oregon v. Mathiason (1977), 429 U.S. 492, 494,97 S.Ct. 711. Likewise, the Edwards rule applies only if the accused invokes his right to an attorney while in custody. Statev. Coleman, Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 22, citing United States v. Harris (S.D.Ohio 1997),961 F.Supp. 1127.
 {¶ 15} In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation. Coleman at ¶ 23. However, "the ultimate inquiry is simply whether there [was] a `formal restraint or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517. "Under this standard, a suspect obviously is in custody if he is formally placed under arrest prior to interrogation. Where the suspect has not been formally arrested, the restraint on the suspect's freedom of movement must be significant in order to constitute custody." State v. Staley
(May 8, 2000), Madison App. No. CA99-08-019, at 7.
 {¶ 16} While "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime[,]" a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station. Mathiason, 429 U.S. at 495. Nor is it converted into a custodial situation simply because the questioned person is one whom the police suspect. Id. Rather, the initial determination of whether an individual is in custody for purposes of Miranda depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.Coleman at ¶ 24, citing Stansbury v. California (1994),511 U.S. 318, 114 S.Ct. 1526. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest."Stansbury at 324.
 {¶ 17} Upon reviewing the transcript of appellant's questioning and the transcript of the suppression hearing, we find that appellant was not in custody while he was at the fire station. It is undisputed that appellant was never placed under arrest. He came to the fire station on a date and at a time convenient for him. The detective testified that he and appellant "had an agreement" prior to the interview that appellant would go to work after the interview and that the detective "was going to do nothing to hinder that." At the beginning of the interview, while the detective indicated to appellant he was a suspect, the detective also told him "I'm not here to arrest you. I'm not gonna take you to jail. * * * You don't need anything stepped in the way of [your job]. I don't wanna try to mess you up on your job." Likewise, before appellant confessed, the detective again told him that "I'm not going to arrest you. Okay. You're not under arrest. You're free to go. * * * You could get up and walk outta here right now. * * * I don't have to read your rights since you're free to walk right out of that door." Appellant was never under any physical restraint during the 45 minute interview and would have been allowed to get up at any time to use the restroom, smoke a cigarette, or get a drink had he asked to. At the close of the interview, and following his confession, appellant was not arrested but instead left the fire station without hindrance and went to work.
 {¶ 18} Considering the foregoing circumstances, we find that the entire time appellant was at the fire station, he was not in custody or otherwise deprived of his freedom in any significant way. As a result, Miranda warnings were not required. SeeColeman at ¶ 27; Mathiason at 495. Likewise, because appellant was not in a custodial situation, the Edwards rule did not apply and the detective was not required to cease the interview and provide appellant with an attorney after appellant made several references to an attorney or after appellant stated "I need a lawyer. * * * This is over. * * * Thank you." Coleman
at ¶ 28. Finally, because the Edwards rule did not apply since appellant was not in a custodial situation after he stated I need an attorney, we need not determine whether the interview resumed at appellant's request (as the trial court found), or whether appellant only agreed to resume the interview (as he asserts on appeal).
 {¶ 19} Appellant also argues that his confession was involuntary and the product of coercive police tactics. Specifically, appellant asserts that his confession was the result of the detective's threats to put appellant in jail and to set a high bond on as many as five felony counts of theft in several jurisdictions, and the detective's promise to charge appellant with only one felony theft charge in return for his confession.
 {¶ 20} "A suspect's decision to waive his privilege against self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." Statev. Otte, 74 Ohio St.3d 555, 562, 1996-Ohio-108. The voluntariness of a confession is a question of law that an appellate court reviews de novo. See State v. Greeno, Seneca App. No. 130-2-46, 2003-Ohio-3687.
 {¶ 21} In deciding whether a defendant's confession was involuntary, "the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Statev. Bays, 87 Ohio St.3d 15, 22, 1999-Ohio-216. Evidence of "coercive police activity" during interrogation is necessary before finding that a confession was involuntarily given. Statev. Cooey (1989), 46 Ohio St.3d 20, 28.
 {¶ 22} A promise of leniency, while relevant to the totality-of-the-circumstances analysis, does not, as a matter of law, render a confession involuntary. See State v. Edwards
(1976), 49 Ohio St.2d 31. Admonitions to tell the truth are considered neither threats nor promises and are permissible.Cooey at 28. Similarly, assurances that a defendant's cooperation will be considered or that a confession will be helpful do not invalidate a confession. State v. Loza,71 Ohio St.3d 61, 67, 1994-Ohio-409. "A mere suggestion that cooperation may result in more lenient treatment is neither misleading nor unduly coercive, as people `convicted of criminal offenses generally are dealt with more leniency when they have cooperated with the authorities.'" State v. Stringham, Miami App. No. 2002-CA-9, 2003-Ohio-1100, ¶ 16. Likewise, an investigator's offer to help if a defendant confesses is not improper. Id., citing State v. Chase (1978), 55 Ohio St.2d 237.
 {¶ 23} In the case at bar, there is no evidence that appellant was physically threatened or harmed or that he was deprived of food, medical treatment, or sleep. The interview was conducted at a time and day convenient for appellant. The interview lasted about 45 minutes and was therefore not particularly lengthy. In its entry denying appellant's motion to suppress, the trial court noted that "There were no threats of arrest[.] * * * Reading the transcript [of the interview] could lead one to infer that there were threats of jail. The detective testified as to how these statements were intended. The court requested, received and listened to the recorded interview. The officer maintained a calm and non-threatening tone of voice and speech pattern throughout." We note that the recorded interview is not before this court as it was not provided on appeal by appellant. However, we have carefully reviewed the transcript of the interview as well as the transcript of the suppression hearing and agree with the trial court that although the detective referred to jail at times, these were not threats of jail.
 {¶ 24} The detective did not deceive appellant when he told appellant he could file one theft charge. The detective did in fact file one theft charge and appellant was in fact charged with one count of theft. The trial court found that there were no improper promises of any kind and that the "detective merely stated and restated that he did not believe [appellant] and this was the one chance [appellant] had to avoid having multiple felony charges filed against him." The detective's statements were not improper or misstatements of the law since appellant was allegedly involved in taking money from five separate deposits from three different businesses (from two different counties). Rather, we find that through his statements, the detective merely admonished appellant to tell the truth and informed him concerning the benefits that would naturally flow from a truthful and honest course of conduct. See State v. Holder (Mar. 19, 1999), Huron App. No. H-98-022.
 {¶ 25} Upon reviewing the evidence before us, we cannot say that the detective's interrogation tactics were so improper or coercive that appellant's will was overborne or his capacity for self-determination was critically impaired as a result. The time and setting of the interview was not coercive. Thus, considering the totality of the circumstances, appellant's confession was voluntarily obtained.
 {¶ 26} In light of all of the foregoing, we find that the trial court did not err by denying appellant's motion to suppress. Appellant's assignment of error is overruled.
 {¶ 27} Judgment affirmed.
Walsh, P.J., and Bressler, J., concur.