OPINION
{¶ 1} Plaintiff-appellant, the state of Ohio, appeals a decision of the Butler County Area I Court granting the motions to suppress filed by defendants-appellees, Kathleen Byrne and Kristina Sicker. For the reasons that follow, we reverse and remand for further proceedings.
 {¶ 2} The record of this case indicates that Oxford police contacted appellees for information about a student who died after she was struck by a train in Oxford, Ohio. *Page 2 
Appellees were subsequently charged with a violation of R.C. 4301.69(B), which states that no person who is an owner or occupant of any public or private place shall knowingly allow an underage person to remain in or on the place while possessing or consuming beer or liquor.
 {¶ 3} Appellees moved to suppress statements they made to police, and the motions were granted by the trial court. The state appealed, pursuant to Crim. R. 12(K). On appeal, the state raises a single assignment of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT COMMITS REVERSIBLE ERROR WHEN IT DETERMINES THAT THERE WAS CUSTODY IN A SITUATION IN WHICH PEOPLE COME TO A POLICE STATION VOLUNTARILY, ARE NOT ARRESTED, AND THEN LEAVE THE POLICE STATION UNHINDERED [SIC]."
 {¶ 6} Appellate review of a ruling on a motion to suppress evidence presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 329, 332. A reviewing court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. The reviewing court then determines as a matter of law, without deferring to the trial court's conclusions, whether the trial court applied the appropriate legal standard. State v. Boland, Clermont App. Nos. CA2007-01-016, CA2007-01-017, 2008-Ohio-353, ¶ 10.
 {¶ 7} During the motion to suppress hearing, Detective Sikora[1] of the Oxford Police Department testified that appellees were asked to come to the police department to provide further information about the decedent and the events before her death. The parties agreed that a videotape of the April 16, 2007 police interview with appellees would be offered into evidence and viewed by the trial court after the suppression hearing. *Page 3 
 {¶ 8} The trial court found that appellees came to the police department voluntarily and were not arrested or handcuffed during their interview, and also found that appellees were not given theirMiranda[2] warnings and did not waive their Miranda rights during the interview process at the police department. The trial court suppressed the statements made at the police department, determining that they were made during a custodial interrogation and appellees were, therefore, entitled to Miranda warnings.
 {¶ 9} The trial court emphasized that its decision was based in part on the fact that the door of the room in which the interview took place was closed when appellees were inside. The trial court also found that appellees were "suspected" of violating R.C. 4301.69(B), and there was an element of "trickery" involved when police asked appellees to help them gather information about the death, and "unbeknownst to [appellees], the situation changed and Det. Sikora began asking questions that could and did illicit incriminating responses" about the decedent's [underage] drinking at their apartment.
 {¶ 10} It is established that the police are not required to administer Miranda warnings to every individual they question. State v.Biros, 78 Ohio St.3d 426, 440, 1997-Ohio-204. Only custodial interrogations trigger the need for Miranda warnings. Id., citingOregon v. Mathiason (1977), 429 U.S. 492, 495, 97 S.Ct. 711.
 {¶ 11} Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602.
 {¶ 12} Custody encompasses a formal restraint or restraint of movement of the degree associated with a formal arrest. California v.Beheler (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517. The relevant inquiry is whether a reasonable person in the suspect's position would *Page 4 
understand that he was in the custody of the police at the time of the interrogation. Berkemer v. McCarty (1984), 468 U.S. 420, 422,104 S.Ct. 3138; State v. Staley (May 8, 2000), Madison App. No. CA99-08-019 (where suspect has not been formally arrested, the restraint on suspect's freedom of movement must be significant in order to constitute custody).
 {¶ 13} The record indicates that appellees and a companion voluntarily came to the police station at the request of police to discuss the circumstances on the night of the decedent's death. The female detective brought the three women into an office and closed the door behind them. The three women sat side by side in chairs placed near a wall.
 {¶ 14} The detective told them that police were attempting to determine the sequence of events that occurred on the night of the student's death and there was a "discrepancy" in the number or identity of the places decedent visited. The women freely discussed the events among themselves, answered the questions posed by the detective, and asked the detective questions. Appellees' companion checked her cell phone on more than one occasion to provide telephone numbers.
 {¶ 15} During this interview, the detective made comments and there was discussion that police were asking appellees to assist in the police investigation, that they were seeking information for the decedent's parents, due, in part, to rumors in the community, and for "closure."
 {¶ 16} The detective told appellees that the decedent had a particular level of alcohol in her system. The detective asked them the type and quantity of alcohol consumed by the decedent, as well as specifically inquiring about where the decedent consumed alcohol, including appellees' apartment.
 {¶ 17} The women and the detective also discussed other acquaintances of the decedent possibly pertinent to the investigation. Both the detective and the women *Page 5 
requested further contact if additional relevant information was discovered. The three women left the police station at the conclusion of the interview.
 {¶ 18} Contrary to the findings and conclusions of the trial court, the interview that took place between appellees and the detective did not constitute a custodial interrogation. As we previously noted, the relevant inquiry is whether a reasonable person in the suspect's position would understand that he was in the custody of the police at the time of the interrogation. Berkemer, 468 U.S. at 422.
 {¶ 19} The requirement of warnings is not to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Biros,78 Ohio St.3d at 440; Berkemer at 421(officer's unarticulated intention regarding arrest has no bearing on question of whether suspect is in custody at that particular time); see, also, State v. Hoffner, 102 Ohio St.3d 358,362, 2004-Ohio-3430, ¶ 26 (Miranda warnings are not required simply because the questioning takes place in a coercive atmosphere).
 {¶ 20} Appellees argue that the detective mislead them about the purpose of the interview and tricked them into making incriminating statements. Having reviewed the record, taking into consideration appellees' arguments and the trial court's findings, we do not agree that appellees' statements were the result of police coercion, or were involuntary. See California v. Beheler, 463 U.S. 1121 at fn. 3 (rejected accused's argument that even though he voluntarily engaged in interview, his participation was coerced because he was unaware of the consequences of his participation, and did not find that accused's lack of awareness transformed situation into custodial situation); cf., State v.Huysman, Warren App. No. CA2005-09-107, 2006-Ohio-2245, ¶ 19-25 (court utilized factors to determine whether accused's statements were voluntarily given). *Page 6 
 {¶ 21} Accordingly, we do not agree with the trial court that appellees were under custodial interrogation and entitled toMiranda warnings when they participated in this interview at the police department. Further, we find the trial court erred when it suppressed the statements appellees made at the police department. The state's assignment of error is sustained.
 {¶ 22} Judgment reversed and this cause is remanded to the trial court for further proceedings.
BRESSLER and POWELL, JJ., concur.
[1] The full name of the witness was not provided for the record.
[2] Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602. *Page 1