[Cite as *State v. Moore*, 2018-Ohio-1778.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-07-110 |
| | : | O P I N I O N |
| - vs - | | 5/7/2018 |
| | : | |
| ALLISON ELIZABETH MOORE, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32701

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Kim Bui, 8080 Beckett Center Drive, Suite 112, West Chester, Ohio 45069, for defendant-appellant

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Allison Elizabeth Moore, appeals from a decision of the Warren County Court of Common Pleas denying her motion to suppress evidence. Appellant further appeals the trial court's imposition of a 36-month prison sentence for her conviction for tampering with evidence. For the reasons detailed below, we affirm appellant's conviction and sentence.

**{¶ 2}** On December 25, 2016, a dead body was found in the middle of Montgomery Avenue in Warren County, Ohio. An investigation by the Warren County Sheriff's Office (WCSO) revealed that Jeremy Foxx had been shot in the back of the head by Zachary Wilson while inside of a vehicle. Appellant was also inside the vehicle when the shooting occurred. Appellant attempted to clean up the blood in the vehicle before helping to burn or depose of the items used to clean the vehicle. Appellant and Wilson then drove to Kentucky, where the vehicle they were driving was painted and disguised.

**{¶ 3}** On December 27, 2016, a warrant was issued for Wilson's arrest. Detectives with the WCSO contacted Wilson's mother to notify her of the warrant, as she had been aiding the officers in their effort to track down Wilson. Wilson's mother informed the detectives that she had picked up Wilson and appellant in Kentucky and was bringing them to the sheriff's office. After Wilson and appellant arrived at the WCSO around 5:30 p.m. on December 27, 2016, Wilson was arrested. Appellant took a nap at the WCSO before being interviewed by detectives. Following this interview, appellant left the sheriff's office with her mother.

**{¶ 4}** Appellant was subsequently indicted on one count of tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree. She filed a motion to suppress her December 27, 2016 statement to law enforcement, arguing the statement was obtained in violation of her constitutional rights as the detectives failed to advise her of her *Miranda* rights prior to the interrogation. She also claimed her statement was not voluntary as she was under the influence of narcotics at the time of the interview.

**{¶ 5}** A hearing on appellant's motion to suppress was held on April 20, 2017. The state introduced, and the trial court accepted into evidence, an audio and video recording of appellant's December 27, 2016 interview, which lasted approximately 55 minutes. The state called Detective Paul Barger as its sole witness. Barger explained that at the time Wilson's

mother brought Wilson and appellant to the WCSO on December 27, 2016, only an arrest warrant for Wilson had been issued. Neither he nor any other detective asked Wilson's mother to bring appellant to the sheriff's office.

{¶ 6} Once Wilson and appellant arrived at the sheriff's office, they were both placed in handcuffs for officer safety. After appellant was patted down, she was taken into the front training room of the WCSO and the handcuffs were removed. While Wilson was being interviewed for approximately two hours, appellant was left in the training room. Appellant was given a can of soda and a blanket, and she fell asleep.

{¶ 7} Once Wilson's interview was over, appellant was brought into the interview room to be questioned by Barger and Detective Wyatt. Appellant was not provided with *Miranda* warnings at this time. Barger informed appellant that she was not under arrest and was free to leave. Appellant was asked numerous times if she was "okay" to talk with the detectives and whether she wanted to talk to them. Appellant told Barger and Wyatt that she wanted to talk to them and "wanted to get the information out there that it was self-defense." Barger testified that although the door to the interview room was closed for privacy, appellant's path to the door was free and clear.

{¶ 8} Appellant was not in handcuffs or otherwise restrained during the interview. Barger testified appellant gave "very specific, very precise" details about the events surrounding the shooting. Although it took appellant "a little bit to answer some of the questions because she wanted to make sure she had them correct," she was able to provide information "as to where they had gone, what gas stations they had stopped at, how they had gotten lost, whose houses they went to, [and] people she talked to." Appellant did not act in a manner that gave Barger concern that she was under the influence of any substance. When questioned by Barger and Wyatt as to whether she was under the influence, appellant stated, "no."

{¶ 9} Barger testified appellant was not threatened or coerced at any time during the interview. Barger explained that the interview was stopped after about 55 minutes, once the detectives sensed appellant was getting tired. Prior to leaving the sheriff's office with her mother, appellant told the detectives that if they needed anything else, they could contact her and she would be willing to talk to them some more.

{¶ 10} Following Barger's testimony, appellant took the stand and admitted she voluntarily went to the sheriff's office with Wilson and his mother. She stated that she knew there was an arrest warrant for Wilson and she believed the detectives wanted to speak with her. Appellant estimated that she was in handcuffs for approximately 10 to 15 minutes upon her arrival of WCSO, but stated she was uncuffed after she was "patted * * * down and [they] made sure I didn't have anything on me."

{¶ 11} Appellant testified that at the time of the interview, she was so tired, sick, and traumatized that she barely understood what she was saying and it took her a long time to process what she was being asked by the detectives. Appellant stated she had taken a Xanax and was "coming off of meth" at the time she arrived at the sheriff's office. She claimed she informed an officer of her drug use while waiting in the training room. Although she was told by Barger and Wyatt that she could stop the interview and leave at any time, appellant stated she felt like she could not leave until she gave a statement because she had been placed in handcuffs when entering the building and "was a witness." She felt if she did not give a statement she would be arrested.

{¶ 12} Appellant testified that at the time of the interview, she was 23 years old, had no prior contact with law enforcement, had never been read her *Miranda* rights, and did not understand that she had the right to remain silent and a right to speak with an attorney. She then admitted she had previously been arrested and booked into the Hamilton County Jail for "obstruction." Appellant testified that, had she known she had the right to remain silent, she

- 4 -

would have done so.

{¶ 13} After considering the foregoing testimony and evidence, the trial court denied appellant's motion to suppress. The court concluded that *Miranda* warnings were not required as "a reasonable person in [appellant's] position would have understood * * * her situation and known that she was free to leave. No formal arrest or restraint on [appellant's] freedom of movement occurred in this case." The court further found appellant's statement was voluntary, nothing that "[t]hough [appellant] now indicates she was under the influence of narcotics, she told the officers at the time that she was not under the influence of any substances and she answered the officers' questions clearly, coherently, and without any indication she was not coherent."

{¶ 14} Following the denial of her motion to suppress, appellant entered a no contest plea to the tampering with evidence charge. The court accepted her plea, ordered that a presentence investigation report ("PSI") be prepared, and set the matter for sentencing. On July 11, 2017, appellant appeared before the court and was sentenced to 36 months in prison, with jail-time credit for 72 days.

{¶ 15} Appellant timely appealed, raising two assignments of error for our review.

{¶ 16} Assignment of Error No. 1:

{¶ 17} THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 18} In her first assignment of error, appellant argues the trial court erred in denying the motion to suppress her December 27, 2016 statement to law enforcement. Appellant maintains that she was in custody on December 27, 2016, and that her constitutional rights were violated by the detectives' failure to advise her of her *Miranda* rights before conducting the custodial interrogation. She further argues that the evidence presented at the motion to suppress hearing demonstrated that she "was [not] of sound mind during the interview" and

- 5 -

that her statement should have been suppressed as it was not voluntarily made.

{¶ 19} Our review of a trial court's denial of a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 20} "It is well established the 'prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 15, quoting *State v. Huysman*, 12th Dist. Warren No. CA2005-09-107, 2006-Ohio-2245, ¶ 13. However, the police are not required to administer the warnings set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), to every individual they question. *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711 (1977). Rather, the "duty to advise a suspect of constitutional rights pursuant to *Miranda* is only required when the police subject a person to a custodial interrogation." *State v. Fridley*, 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 35.

{¶ 21} "*Miranda* defines custodial interrogation as any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his

freedom of any action in any significant way.'" *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10, quoting *Miranda*, 384 U.S. at 444. "In determining whether an individual was in custody during an interrogation by the police, the court must examine the totality of the circumstances surrounding the interrogation." *State v. Gomez*, 12th Dist. Butler No. CA2017-03-035, 2017-Ohio-8681, ¶ 20, citing *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 12. "[A] person is not in custody merely because [s]he is questioned at the police station or because [s]he is considered a suspect" to a crime. *State v. Smith*, 12th Dist. Fayette No. CA2006-08-030, 2009-Ohio-197, ¶ 12, citing *Mathiason*, 429 U.S. at 495. Rather, a person is in custody if she is formally placed under arrest prior to a police interrogation or, if not formally arrested, when there is a significant restraint placed on her freedom of movement. *Gomez* at ¶ 20, citing *Smith* at ¶ 11. The determination of whether a custodial interrogation has occurred "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 24, citing *Stansbury v. California*, 511 U.S. 318, 323-324, 114 S.Ct. 1526 (1994). Therefore, "[i]n judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980).

**{¶ 22}** After examining the totality of the circumstances surrounding appellant's December 27, 2016 interview, we find that appellant was not in custody at the time of the interview. Appellant voluntarily went to the sheriff's office with Wilson and Wilson's mother. No warrant had been issued for her arrest and law enforcement had not requested an interview with her. Although appellant was briefly placed in handcuffs upon her arrival at the

sheriff's office, this was done only for officer safety and she was released from the handcuffs after being patted down.

**{¶ 23}** Appellant was left in the training room while detectives interviewed Wilson. She was given a soda and a blanket, and she took about a two-hour nap. After the detectives finished interviewing Wilson, Moore was brought into an interview room. The door to the interview room was closed for privacy, but was not locked and was accessible by appellant. Appellant was told by the detectives that she was not under arrest and was free to leave whenever she wanted. Appellant was asked whether she wanted to talk to the detectives, and she said "yes" as she "wanted to tell [them] what happened * * * at the incident because she wanted to get the information out there that it was self-defense." Appellant was not restrained in any way during the interview.

**{¶ 24}** Given the foregoing circumstances, we find that appellant was not in custody at the time of December 27, 2016 interview. *See, e.g., Coleman*, 2002-Ohio-2068 at ¶ 27; *Gomez*, 2017-Ohio-8681 at ¶ 21-22; *Mathiason,* 429 U.S. at 495. As appellant was not under arrest or a significant restraint placed on her movement at the time of the interview, *Miranda* warnings were not required.

**{¶ 25}** Appellant argues that even if she was not in custody at the time of her December 27, 2016 statement, the statement should nonetheless be suppressed as it was not voluntary. Appellant contends she felt coerced into speaking with the detectives and her capacity for self-determination was critically impaired and overborne at the time of the interview as she was ill, coming down off meth, and had recently taken a Xanax.

**{¶ 26}** In determining whether a statement was made voluntarily, courts should consider the totality of the circumstances, including "the age, mentality, and prior criminal experience of the accused; the length intensity, and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

*State v. Edwards*, 49 Ohio St.2d 31 (1976), paragraph two of the syllabus, *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3147 (1978). "A suspect's decision to waive [her] privilege against self-incrimination is made voluntarily absent evidence that [her] will was overborne and [her] capacity for self-determination was critically impaired because of police conduct." *State v. Otte*, 74 Ohio St.3d 555, 562 (1996), citing *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515 (1986).

{¶ 27} At the time of the interview, appellant was 23 years old and she had prior experience with the criminal justice system as she was arrested in July 2016 for obstruction. Prior to the interview, appellant had taken a two-hour nap. Upon waking, she agreed to speak to Detective Barger and Detective Wyatt. When questioned by the detectives, she denied being under the influence of any substance. Despite being advised that she was not under arrest and could leave at any time, appellant chose to answer the detectives' questions in an interview that lasted approximately 55 minutes. No promises or threats were made to induce appellant into giving a statement. In fact, appellant was specifically advised by the detectives that the decision on whether or not she would be charged with any crimes would be left to the discretion of the prosecutor.

{¶ 28} During the interview, appellant was able to provide "very specific, very precise" details about the shooting, including information as to where she and Wilson had gone, what gas stations they had stopped at, how they had gotten lost, what houses they went to, and who they had talked to. The manner in which appellant answered the detectives' questions did not cause Barger concern that appellant was under the influence of any substance, as he believed appellant sometimes paused or took "a little bit to answer * * * because she wanted to make sure she had them correct."

{¶ 29} Accordingly, after looking at the totality of the circumstances, we conclude that appellant's will was not overborne by any police conduct and that her statement was

voluntary. *See, e.g., State v. Klapka*, 11th Dist. Lake No. 2003-L-044, 2004-Ohio-2291, ¶ 16-24. Appellant's motion to suppress was properly denied by the trial court, and appellant's first assignment of error is therefore overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPOSING THE MAXIMUM SENTENCE UPON THE DEFENDANT.

{¶ 32} In her second assignment of error, appellant contends the trial court erred when it imposed a 36-month prison term without "mak[ing] the proper findings to support issuing the maximum sentence."

{¶ 33} We review the imposed sentence under the standard of review set forth in R.C. 2953.08(G)(2), which governs all felony sentences. *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1; *State v. Crawford,* 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to that statute, an appellate court does not review the sentencing court's decision for an abuse of discretion. *Marcum* at ¶ 10. Rather, R.C. 2953.08(G)(2) compels an appellate court to modify or vacate a sentence only if the appellate court finds by clear and convincing evidence that "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.* at ¶ 1. A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers,* 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8; *State v. Julious*, 12th Dist. Butler No. CA2015-12-224, 2016-Ohio-4822, ¶ 8. Thus, this court may "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg,* 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

**{¶ 34}** As appellant was convicted of a third-degree felony, the trial court was authorized by R.C. 2929.14(B)(3)(b) to impose a prison term of "nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." Contrary to appellant's assertions, when the trial court imposed the 36-month prison term, it was not required to make any specific findings to support its imposition of the maximum sentence. *See State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, ¶ 37 (noting that since the court's decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, trial courts are no longer required to make findings or give their reasons for imposing maximum sentences); *State v. Scott*, 12th Dist. Madison No. CA2010-06-012, 2010-Ohio-5065, ¶ 17; *State v. West*, 8th Dist. Cuyahoga No. 105568, 2018-Ohio-956, ¶ 9.[1]

**{¶ 35}** Rather, in imposing appellant's sentence, the trial court was required to consider the principles and purposes of felony sentencing. Pursuant to R.C. 2929.11(A), the purposes of felony sentencing are to protect the public from future crime by the offender and to punish the offender. A felony sentence must be reasonably calculated to achieve the purposes set forth in R.C. 2929.11(A) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B). In sentencing a defendant, a trial court is not required to consider each sentencing factor, but rather to exercise its discretion in determining whether the sentence satisfies the overriding purpose of Ohio's sentencing structure. *State v. Littleton*, 12th Dist. Butler No. CA2016-03-060, 2016-Ohio-7544, ¶ 12. The factors set forth in R.C. 2929.12 are nonexclusive, and R.C. 2929.12 explicitly allows a trial court to consider any relevant factors in imposing a sentence.

---

1. In her appellate brief, appellant relies on *State v. Davis*, 2d Dist. Clark No. 2002-CA-43, 2003-Ohio-4839, for the proposition that R.C. 2929.14(C) prohibits a trial court from imposing a maximum sentence unless the court finds that the offender (1) committed the worst form of the offense, (2) poses the greatest likelihood of committing future crimes, (3) committed certain major drug offenses, or (4) was a repeat violent offender. Appellant's reliance on this case is misplaced as R.C. 2929.14(C) has been revised, and the version of the statute referenced by the *Davis* court is no longer in effect.

*Id.*; *State v. Birt,* 12th Dist. Butler No. CA2012-02-031, 2013-Ohio-1379, ¶ 64.

**{¶ 36}** After a thorough review of the record, we find no error in the trial court's decision to sentence appellant to a 36-month prison term. The record plainly reveals that appellant's sentence is not clearly and convincingly contrary to law and is supported by the record. In imposing appellant's 36-month prison sentence, the trial court properly considered the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12. "The fact that the trial court did not expressly cite to R.C. 2929.11 and 2929.12 during the sentencing hearing is immaterial, considering it specifically cited to both statutes within its sentencing entry." *Julious,* 2016-Ohio-4822 at ¶ 11. The court's sentencing entry provides as follows:

> The Court has considered the record, oral statements, any victim impact statement and presentence report prepared, as well as the principles and purposes of sentencing under R.C. §2929.11. The Court has balanced the seriousness and recidivism factors under R.C. §2929.12 and considered the factors under R.C. §2929.13. The Court inquired if the Defendant had anything to say in mitigation regarding the sentence.
>
> * * *
>
> The Court finds the Defendant is not amenable to an available community control sanction and that prison is consistent with the purposes and principles of R.C. §2929.11.

**{¶ 37}** Further, at sentencing the court stated, "I've considered all the relevant sentencing factors in determining the sentence and the length of it mindful of the requirements of the Revised Code." The court discussed the seriousness of the offense, noting that appellant had tampered with evidence by covering up evidence of a murder. The court noted it was not a "spur of the moment" decision, as appellant's criminal conduct extended into the day after the murder. The court found that "probation would not adequately punish [appellant] and it would seriously demean what happened in this case."

**{¶ 38}** The court also considered factors relevant to the likelihood of recidivism.

Although appellant expressed remorse for her actions and had no prior felony convictions, appellant had an ongoing drug problem that she attributed to the commission of the tampering offense. While the case was pending, appellant continued to use drugs, failing multiple drug screenings and violating the terms of her bond. The court reasoned that appellant could only be rehabilitated if she got help for her addiction, which she had not yet done on her own, and stated it strongly felt that a necessary part of her recovery was "facing the consequences of [her] acts" and "paying the price" for what she had done.

{¶ 39} Though appellant disagrees with the trial court's analysis and balancing of the seriousness and recidivism factors set forth in R.C. 2929.12, it is "[t]he trial court [that], in imposing a sentence, determines the weight afforded to any particular statutory factors, mitigating grounds, or other relevant circumstances." *State v. Steger*, 12th Dist. Butler No. CA2016-03-059, 2016-Ohio-7908, ¶ 18, citing *State v. Stubbs*, 10th Dist. Franklin No. 13AP-810, 2014-Ohio-3696, ¶ 16. The fact that the trial court chose to weigh various sentencing factors differently than the manner in which appellant would have weighed them does not mean the trial court erred in imposing appellant's sentence. *See State v. Abrams*, 12th Dist. Clermont Nos. CA2017-03-018 and CA2017-03-019, 2017-Ohio-8536, ¶ 17. The record supports the trial court's imposition of the 36-month prison term.

{¶ 40} As appellant's prison sentence is not clearly and convincingly contrary to law and is supported by the record, her second assignment of error is overruled.

{¶ 41} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.