[Cite as *State v. Smith*, 2017-Ohio-7540.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|                         |   |                          |
|-------------------------|---|--------------------------|
| STATE OF OHIO,          | : |                          |
| Plaintiff-Appellee,     | : | CASE NO.  CA2017-02-013  |
|                         | : | O P I N I O N            |
| - vs -                  |   | 9/11/2017                |
|                         | : |                          |
| DOROTHY JANE SMITH,     | : |                          |
| Defendant-Appellant.    | : |                          |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15 CR 31510

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Brannon & Associates, Matthew C. Schultz, Dwight D. Brannon, 130 West Second Street, Suite 900, Dayton, Ohio 45402, for defendant-appellant

**RINGLAND, P.J.**

{¶ 1}   Defendant-appellant, Dorothy Jane Smith, appeals her conviction in the Warren County Court of Common Pleas for trespass in a habitation.  For the reasons discussed below, this court affirms Dorothy's conviction.

{¶ 2}   Victoria Smith lived with the father of her children, Anthony Smith.[1]   In

---

1. While they share a surname, Victoria and Anthony are not married.

November 2015, while Anthony was away from the home, Victoria moved out and took the children with her. Victoria and the children moved into a house in Springboro. Victoria did not tell Anthony or anyone in his family where she moved because she did not want them to know.

{¶ 3} Anthony returned after the move and contacted Springboro, Ohio police. Anthony complained that Victoria took property that belonged to him when she moved out. After the police spoke with Victoria, they advised both parties that the dispute was civil and would need to be resolved in court.

{¶ 4} The day after the move, Victoria was in her kitchen washing dishes after dinner. Victoria's children told her that Dorothy, who is Anthony's mother and the children's grandmother, was inside the attached garage. Victoria left the kitchen, opened the interior door to the garage, and confirmed that Dorothy was standing in the garage, which had been left open.

{¶ 5} Victoria testified that when she opened the door to the garage, Dorothy announced that she was there to get Anthony's "stuff." Dorothy appeared calm. Victoria began moving her children and animals back into the house and told her older son to keep the younger children upstairs. Victoria told Dorothy that she needed to leave the home. Dorothy became agitated and started walking towards Victoria who was standing at the door inside the garage. Dorothy was "name calling" Victoria and continuing to say that Victoria needed to give her Anthony's "stuff." Victoria continued telling Dorothy that she needed to leave.

{¶ 6} Victoria attempted to close the door inside the garage but Dorothy pushed the door to keep it open. Both Victoria and Dorothy pushed the door back and forth until Victoria realized that Dorothy would not stop. Victoria left the door and retreated towards the kitchen to call 9-1-1. Dorothy followed her into the kitchen.

{¶ 7}  While Victoria was speaking with 9-1-1 dispatchers, Dorothy followed her around the kitchen island, screaming and continuing to demand the return of her son's property.  Dorothy then raised her hand in a threatening manner and Victoria responded by slapping Dorothy's face, which momentarily shocked Dorothy into silence.  Victoria began pushing Dorothy by her shoulders out of the house through the garage.  Dorothy waited for police to arrive in her car parked at the end of the driveway.

{¶ 8}  Dorothy told a responding police officer her version of events while being recorded on a police car's dash camera.  The state later played the dash-camera video for the jury.  Dorothy admitted to the officer that she was aware that police earlier advised her son that the dispute must be resolved through the civil court system.  Nonetheless, she decided she would come to Victoria's house to see if she could resolve the issue without the cost associated with utilizing the court system.

{¶ 9}  Dorothy alleged that she walked into the open garage and saw her grandchildren.  It was customary for her family to enter each other's homes through the garage. Victoria appeared at the door inside the garage and held the door open for her to enter.  She followed Victoria into the kitchen.  While in the kitchen, she accused Victoria of stealing her son's property.  Victoria slapped her in the face and yelled at her to leave the property.  She left the house and waited in her car for the police to arrive.

{¶ 10}  The police arrested Dorothy.  A grand jury later indicted Dorothy for one count of trespass in a habitation, a felony of the fourth degree.  At the jury trial, the state called Victoria and two responding police officers to testify.  Dorothy rested without introducing evidence.  The jury returned a guilty verdict. Dorothy raises four assignments of error in this appeal.

{¶ 11}  Assignment of Error No. 1:

{¶ 12}  THERE WAS INSUFFICIENT EVIDENCE TO DEMONSTRATE THAT MRS.

SMITH ENTERED THE HABITATION THROUGH FORCE, STEALTH OR DECEPTION.

{¶ 13}  Assignment of Error No. 2:

{¶ 14}  MRS. SMITH'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 15}  Dorothy argues there was insufficient evidence to support her conviction for trespass in a habitation and that her conviction was otherwise against the manifest weight of evidence because she entered Victoria's home through an open garage without using force, stealth, or deception.  The state contends that the evidence showed that Dorothy used force as she pushed the door inside the garage to gain entry to the interior of the home.  Furthermore, the state argues that Dorothy used force to remain in the home because Victoria had to push her out of the kitchen.[2]

{¶ 16}  When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Intihar*, 12th Dist. Warren No. CA2015-05-046, 2015-Ohio-5507, ¶ 9.  The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  In other words, "the test for sufficiency requires a determination as to whether the state has met its burden of production at trial."  *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34, citing *State v. Wilson*, 12th Dist. Warren No. CA2006-01-007, 2007-Ohio-2298, ¶ 34.  When evaluating the sufficiency of the evidence, this court must view all evidence in the light most favorable to the state and "defer to the trier

_____

2. The state does not dispute Dorothy's claim that there was no evidence of entry by stealth or deception.

of fact on questions of credibility and the weight assigned to the evidence." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 132.

{¶ 17} A manifest weight challenge scrutinizes the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 12th Dist. Butler Nos. CA2013-08-146 and CA2013-08-147, 2014-Ohio-2472, ¶ 34.

{¶ 18} The Revised Code proscribes trespassing in a habitation: "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present." R.C. 2911.12(B). Any force effecting entrance, however slight, is sufficient. *State v. Lattire*, 12th Dist. Butler No. CA2004-01-005, 2004-Ohio-5648, ¶ 27. The Revised Code defines criminal trespass as "[k]nowingly enter[ing] or remain[ing] on the land or premises of another[,]" "without privilege to do so." R.C. 2911.21(A)(1).[3]

{¶ 19} Initially, Dorothy argues that she could not have committed trespass in a habitation because her initial entry into the home was accomplished without force, i.e., by walking into the open garage. Because of the strained circumstances surrounding Dorothy's visit to the home, this court is doubtful that Dorothy was privileged to enter the garage.

---

3. In her reply brief and at oral argument, Dorothy disputed that the definition of criminal trespass as set forth in R.C. 2911.21 applied in construing the word "trespass" in R.C. 2911.12, the burglary/trespass in a habitation statute. This argument is meritless. R.C. 2911.10 provides: "[a]s used in sections 2911.11 to 2911.13 of the Revised Code, the element of trespass refers to a violation of section 2911.21 of the Revised Code."

However, even if this court assumed that Dorothy could enter the garage without trespassing we reject the claim that she could thereafter enter any closed portion of the home by force and not commit trespass in a habitation.

{¶ 20} Dorothy cites several cases for the proposition that an attached garage is part of a habitation for purposes of trespass crimes. This court does not disagree. However, those cases do not support Dorothy's claim that a nontrespassory entry into an open portion of a home permits an individual to thereafter trespass into any closed portion of the home.

{¶ 21} In a similar factual scenario, the 10th District Court of Appeals affirmed the aggravated burglary conviction of a defendant who entered a home through an open garage and then opened a closed, but unlocked interior garage door. *State v. Wilcox*, 10th Dist. Franklin No. 15AP-957, 2016-Ohio-7865. The court found that the evidence supported the conclusion that the defendant used force by opening the unlocked interior door. *Id.* at ¶ 38. As noted in the state's brief, this court also addressed this issue, although under a different set of facts. *State v. Wisecup*, 12th Dist. Clermont No. CA2004-02-014, 2004-Ohio-5652. In *Wisecup* the defendant entered the victim's home through an open door and groped the victim, who told him to "get the hell away from me" and had to push the defendant away from her. *Id.* at ¶ 7-8. This court held that if we assumed that the defendant's initial entry was lawful, his privilege to remain in the home terminated upon his conduct and he used force to remain in the home. *Id.* at ¶ 11.

{¶ 22} This court concludes that an initial lawful entry into a habitation can give way to a trespass crime if force, stealth, or deception is used to enter closed portions of the home. Accordingly, to the extent Dorothy may have been legally present in the garage, her presence became a trespass when Victoria told her to leave and she did not. When Dorothy used force against the door to enter the home she elevated a criminal trespass into trespass in a habitation.

- 6 -

{¶ 23} After thoroughly reviewing the record, this court finds that Dorothy's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Victoria's testimony established that Dorothy, after being told to leave the home refused and instead exerted force to enter the home, i.e., Dorothy pushed the door inside the garage while Victoria struggled on the opposite side to keep her out. Eventually Victoria retreated to the kitchen. Dorothy then opened the door and entered the interior of the home. After Dorothy moved into the kitchen, Victoria exerted force to make Dorothy leave the kitchen, i.e., by pushing on her shoulders. Therefore, Dorothy also exerted some force to remain in the home. These facts were sufficient to allow the case to go to the jury.

{¶ 24} This court further concludes that the jury did not lose its way in convicting Dorothy. Dorothy's surprise appearance at Victoria's home coincided with Victoria's estrangement with Dorothy's son, a secretive move, and earlier police involvement in a property dispute. Thus, Victoria's claim that Dorothy ignored Victoria's commands and angrily and forcibly entered the home with the goal of securing Anthony's possessions is believable. Less credible is Dorothy's claim that she was welcomed into the home and then decided to call Victoria a thief, which led to her being slapped and told to leave. Moreover, Dorothy's demeanor, as depicted in the dash-camera video, corroborates Victoria's version of events. The manifest weight of the evidence supports Dorothy's conviction.

{¶ 25} This court overrules Dorothy's first and second assignments of error.

{¶ 26} Assignment of Error No. 3:

{¶ 27} MRS. SMITH'S CONVICTION WAS THE RESULT OF PROSECUTORIAL MISCONDUCT.

{¶ 28} Dorothy argues that the state denied her a fair trial based on four instances of prosecutorial misconduct. In each instance, Dorothy did not object. She is therefore limited to a review for plain error. *State v. Cotton*, 12th Dist. Butler No. CA2003-06-159, 2004-Ohio-

4409, ¶ 19. Under a plain error analysis, a reviewing court will not reverse a conviction "unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Dougherty*, 12th Dist. Preble No. CA2013-12-014, 2014-Ohio-4760, ¶ 54.

{¶ 29} The state is entitled to a certain degree of latitude in making its concluding remarks. *State v. Layne*, 12th Dist. Clermont No. CA2009-07-043, 2010-Ohio-2308, ¶ 58. A court will find prosecutorial misconduct only when the remarks were improper and those improper remarks prejudicially affected substantial rights of the defendant. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 62. "The focus of an inquiry into allegations of prosecutorial misconduct is upon the fairness of the trial, not upon the culpability of the prosecutor." *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 57. Therefore, a finding of prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial because of the prosecutor's prejudicial remarks. *Layne* at ¶ 60.

<u>Comment on use of force</u>

{¶ 30} Dorothy contends that during closing arguments the prosecutor improperly stated that Victoria's use of force to remove Dorothy from the property could establish the force element of trespass in a habitation. Dorothy cites these comments:

> If she has to use force to eject her from the property, then force was used. If she's resisting, then force was used. * * * If you go to someone's house and they've told you to leave and you don't leave, then they can use force lawfully against you. And that force is force sufficient for the charge. * * * She had to use force to eject me from the property.

{¶ 31} The prosecutor's comments were accurate statements of the law with respect to force. As discussed previously, any force used to enter or remain is sufficient for purposes of establishing a violation of R.C. 2911.12(B). Testimony at trial established that Victoria had to push Dorothy by her shoulders to make her leave the property; thus, Dorothy was exerting

some force in opposition. There is no error here, plain or otherwise.

Comment on the state's burden of proof

{¶ 32} Next, Dorothy argues that during voir dire the prosecutor provided the jury with an expanded definition of reasonable doubt. The prosecutor stated:

> But there is the legal standard in the case as the judge explained is the State has to prove the charges beyond a reasonable doubt. Now, that does not mean beyond all doubt, beyond a shadow of a doubt. Whatever kinds of other things because it's a legal term and the judge is going to give you an instruction about what that means. What I usually tell people is, it means that at the end of the day when you've heard all of the evidence, you feel comfortable going home and saying I did the right thing, right? I gave it my best effort and I did the right thing. I am comfortable with my decision.

{¶ 33} The standard instruction on proof beyond a reasonable doubt describes it as "proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." Ohio Jury Instructions, CR Section 405.07. The prosecutor's description of reasonable doubt as based on a juror's "comfort" with the verdict does not comport with the instruction on the state's burden of proof and was therefore erroneous and improper.

{¶ 34} Nonetheless, Dorothy cannot demonstrate plain error. The trial court instructed the jury that it was the court's "duty to instruct [the jury] on the law that applies to this case[,]" and that it was the jurors' "sworn duty to accept these instructions and to apply the law" given by the court. Thereafter, the court provided the jurors with the proper instruction defining the state's burden of proof. Additionally, for the reasons set forth in response to the first and second assignments of error, this court concludes that the outcome at trial would not have changed but for the prosecutor's comments.

Comments appealing to jurors' emotions

{¶ 35} Dorothy next argues that the prosecutor engaged in excessively emotional

argument during closing by stating that "we know that there was a long-standing bad relationship going on there" between Dorothy and Victoria, and that Dorothy "didn't go there to be nice. She went there to try to get Victoria to give her stuff back." We find no error here. The prosecutor's statements were fair comment on the evidence presented. Victoria's testimony as well as Dorothy's statements on the dash-camera video would support the conclusion that Victoria and Dorothy's relationship was at times strained. Dorothy was amiable in her own version of events. Thus, the prosecutor's comments were appropriate in arguing against Dorothy's credibility. There is no error here, much less plain error.

### Improper bolstering

{¶ 36} Finally, Dorothy argues that the prosecutor improperly "bolstered" Victoria's testimony by repeatedly asking Victoria if she told the truth when discussing the incident with police officers and in her written statements. Bolstering is improper and occurs where a lay witness testifies as to another witness' veracity. *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 36. "[I]t is the fact-finder who bears the burden of assessing the credibility and veracity of witnesses." *Id.* at ¶ 17. Victoria was not offering an opinion as to her own truthfulness or someone else's truthfulness. Consequently, this was not improper bolstering. The jury could decide for themselves whether Victoria was being truthful when asked about telling the truth.

{¶ 37} This court overrules Dorothy's third assignment of error.

{¶ 38} Assignment of Error No. 4:

{¶ 39} MRS. SMITH'S CONVICTION WAS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 40} Dorothy argues that her trial counsel was ineffective for failing to call her to testify at trial. Dorothy further argues that counsel was ineffective for failing to object to the same alleged instances of prosecutorial misconduct that she contests in her third assignment

of error.

**{¶ 41}** To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that her trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052 (1984). Failure of one prong of the *Strickland* test is fatal to any claim of ineffective assistance of counsel. *State v. Clarke*, 12th Dist. Butler No. CA2015-11-189, 2016-Ohio-7187, ¶ 49.

<u>Declining to call Dorothy to testify</u>

**{¶ 42}** Trial tactics and strategies, even if debatable, do not constitute a denial of effective assistance of counsel. *State v. Hoop*, 12th Dist. Brown No. CA2004-02-003, 2005-Ohio-1407, ¶ 20. The decision whether to call a witness during trial falls squarely within the realm of trial tactics and perhaps none more so than the decision whether a defendant should testify on his or her own behalf. *Id.* This court is not in a position to second-guess trial counsel's advice to his or her client on the decision whether to take the stand. *Id.*

**{¶ 43}** Here, Dorothy argues that her decision not to take the stand prevented her from contradicting Victoria's trial testimony. However, Dorothy provided the jury with her version of events through the dash-camera video. With respect to trial strategy, there are numerous reasons that counsel may have advised Dorothy against taking the stand.

**{¶ 44}** Dorothy also cannot demonstrate prejudice. Dorothy only argues that if she had testified the jury would have been able to view her recounting the night's events in a "calm" manner as opposed to the emotional way she is depicted in the dash-camera video. However, this court cannot say that the outcome at trial would have changed even if we could speculate as to Dorothy's demeanor on the stand.

<u>Failure to object</u>

**{¶ 45}** As discussed in response to the third assignment of error, the statements

- 11 -

made during closing argument were not improper and thus trial counsel was not deficient. To the extent it was arguably deficient for defense counsel not to object to the prosecutor's comment regarding the state's burden during voir dire, Dorothy cannot demonstrate prejudice because she cannot demonstrate a changed outcome. Dorothy's fourth assignment of error is overruled.

**{¶ 46}** Judgment affirmed.

PIPER and M. POWELL, JJ., concur.