[Cite as *State v. Huff*, 2020-Ohio-1064.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2019-06-104 |
| - vs - | : | O P I N I O N<br>3/23/2020 |
| | : | |
| TODD S. HUFF, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2018-12-2100

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Rodriguez & Porter, Ltd., Paul W. Shonk, 5103 Pleasant Avenue, Fairfield, Ohio 45014, for appellant

**S. POWELL, J.**

{¶ 1} Appellant, Todd S. Huff, appeals the decision of the Butler County Court of Common Pleas denying his motion to suppress. For the reasons outlined below, we affirm the trial court's decision.

{¶ 2} Huff was charged with one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a fifth-degree felony. The charge arose after Huff admitted to

Butler County Sheriff Deputy Jeffrey Stevison that the methamphetamine found hidden in a cigarette pack located on the nightstand next to his bed belonged to him. After denying Huff's motion to suppress, the matter proceeded to a one-day jury trial. Following deliberations, the jury returned a verdict finding Huff guilty as charged. The trial court sentenced Huff to a 12-month prison term. Huff now appeals the trial court's decision overruling his motion to suppress, raising the following single assignment of error for review.

{¶ 3} THE TRIAL COURT ERRED BY OVERRULING THE APPELLANT'S MOTION TO SUPPRESS.

{¶ 4} In his single assignment of error, Huff argues the trial court erred by denying his motion to suppress. In support, Huff argues the trial court erred by finding he was not subject to a custodial interrogation when Deputy Stevison asked him whether the methamphetamine found hidden in the cigarette pack belonged to him, thereby alleviating the need for Huff to be advised of his *Miranda* rights.[1] We disagree.

{¶ 5} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Gray*, 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 15, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-Ohio-828, ¶ 8. This court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023, 2013-Ohio-4764, ¶ 14. "An appellate court, however, independently reviews the trial court's legal conclusions

---

1. We note that Huff cites extensively from the trial transcript rather than the transcript of the hearing on his motion to suppress. However, when ruling on a motion to suppress this court is "limited to the evidence presented at the suppression hearing in our review of the trial court's decision on the motion to suppress." *State v. Clarke*, 12th Dist. Butler No. CA2000-11-234, 2001 Ohio App. LEXIS 4737, *3, fn.1 (Oct. 22, 2001).

based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12.

{¶ 6} The issuance of *Miranda* warnings is only required when police subject a person to custodial interrogation. *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). "*Miranda* defines custodial interrogation as any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of any action in any significant way.'" (Emphasis omitted.) *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). The determination of whether a custodial interrogation has occurred "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 24, citing *Stansbury v. California*, 511 U.S. 318, 323-324, 114 S.Ct. 1526 (1994). "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980).

{¶ 7} Deputy Stevison was the lone witness to testify at the suppression hearing. Deputy Stevison testified that he was dispatched to investigate a report that drugs had been found within a single-family home located in Hamilton, Butler County, Ohio. Upon Deputy Stevison's arrival at that home, a resident of the home, V.M., allowed Deputy Stevison to come inside. Deputy Stevison testified that once he was inside, he immediately observed Huff sitting on the couch in the living room next to a "younger gentleman." The record

indicates that this younger gentleman, who Deputy Stevison testified looked no older than 19 years old, was subsequently identified as V.M.'s son. The record also indicates that V.M. and Huff were at that time engaged to be married.

{¶ 8} Seeing as "they were all right there" in the living room, Deputy Stevison asked V.M., V.M.'s son, and Huff, "what's going on?" V.M. responded and told Deputy Stevison that Huff had been living in the home with her and her son to "sober up" and "get clean." V.M., however, told Deputy Stevison that she had found what she believed were "drugs in the bedroom that [Huff] was staying in on the nightstand inside a cigarette pack." Upon learning of the supposed drugs hidden in the cigarette pack, Deputy Stevison asked V.M. and V.M.'s son where the cigarette pack was. To this, V.M.'s son stood up and removed the cigarette pack from under the couch cushion where he had been sitting. V.M.'s son then handed the cigarette pack to Deputy Stevison. Deputy Stevison testified that V.M. had put the cigarette pack under the couch cushion to "temporarily hid[e] it, so that Mr. Huff could not get to it because [Huff] was aware that they had called the police."

{¶ 9} Deputy Stevison testified that after being handed the cigarette pack by V.M.'s son, he opened the cigarette pack and discovered "[i]nside the cigarette pack, inside another plastic baggie was a crystal-like substance inside of it." Deputy Stevison testified that he then asked Huff "whose cigarette pack it was" and "if it was his cigarette pack." Huff admitted to Deputy Stevison that the cigarette pack belonged to him. Deputy Stevison then asked Huff "whose crystal-like substance was inside the pack and in the baggie." Huff admitted to Deputy Stevison that the substance hidden inside the cigarette pack also belonged to him. Deputy Stevison then removed the substance from the cigarette pack and asked Huff, "is this yours?" Deputy Stevison testified that Huff responded, "Yes. His response was very slow." The crystal-like substance was later determined to be methamphetamine.

{¶ 10} Huff argues the trial court erred by denying his motion to suppress since he was in custody when Deputy Stevison asked him whether the methamphetamine found hidden in the cigarette pack belonged to him. However, although there is no dispute that Deputy Stevison did not advise Huff of his *Miranda* rights prior to asking him about the methamphetamine, the record is clear that Huff was not in custody when he was questioned by Deputy Stevison. This is because Huff was neither handcuffed nor was Huff detained, threatened, physically intimidated, or patted down by Deputy Stevison prior to Deputy Stevison asking Huff about the methamphetamine. This includes Deputy Stevison refraining from using any type of physical force on Huff and Deputy Stevison keeping his firearm holstered both before and after speaking with Huff.

{¶ 11} Huff was also not overpowered, tricked, or coerced in any way by Deputy Stevison when Deputy Stevison asked Huff about the methamphetamine. *See, e.g., State v. Frost*, 12th Dist. Fayette No. CA2018-11-023, 2019-Ohio-3540, ¶ 20 (appellant was not subject to a custodial interrogation where appellant was not handcuffed, threatened, overpowered, tricked, or coerced in any way when being questioned by two police officers inside his home). In fact, Deputy Stevison never gave any commands to V.M., V.M.'s son, or Huff upon entering the home prior to asking Huff about the methamphetamine. As Deputy Stevison testified:

> Q: Okay. When [you] came in the door, did you give any demands to the three of them sitting there?
>
> A: No.
>
> Q: Did you tell them to keep their hands out where you could see them or anything of that nature?
>
> A: No. Nope.

{¶ 12} The record instead indicates that Deputy Stevison, being the only law enforcement officer present at the scene, was calm when speaking with Huff and merely

trying to ascertain whether the methamphetamine found hidden in the cigarette pack belonged to Huff given the allegations that the cigarette pack was located on the nightstand next to his bed. This all occurred while Huff sat unrestrained on the couch in the living room of the home where he was then residing with his fiancé, V.M., and V.M.'s son to "sober up" and "get clean." That Huff may have known V.M. or V.M.'s son had called the police is immaterial. An individual is not in custody simply because that person knows the police have been called and dispatched to the scene. This is particularly true here when considering Deputy Stevison specifically testified that Huff was free to leave upon his arrival. *See, e.g., State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 14 (appellant was not subject to custodial interrogation where appellant was never threatened and never told that he was under arrest or that he was not free to leave when being questioned by a police officer outside appellant's home in an unmarked police cruiser).

{¶ 13} Just as the trial court found, Huff "was not detained, arrested, or in custody" when asked by Deputy Stevison whether the methamphetamine found hidden within the cigarette pack belonged to him. That is to say, contrary to Huff's claim, there was nothing "faulty" with the trial court's analysis. Rather, given the facts established by Deputy Stevison's testimony elicited at the suppression hearing, the trial court properly determined that Huff was not subject to a custodial interrogation when Deputy Stevison asked him about the methamphetamine. Considering this court's prior similar holdings, including this court's holdings in *Frost* and *Robinson* cited above, such a decision does not invite "absurd results" as Huff suggests. This holding instead fully complies with the law as to whether a custodial interrogation has occurred. Therefore, because Huff was not subject to a custodial interrogation when Deputy Stevison asked him whether the methamphetamine found hidden within the cigarette pack belonged to him, the trial court did not err by denying Huff's motion to suppress. Huff's single assignment of error lacks merit and is overruled.

{¶ 14} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.