[Cite as *State v. Jentzen*, 2024-Ohio-33.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-04-030 |
| | : | O P I N I O N |
| - vs - | | 1/8/2024 |
| | : | |
| STEVEN JENTZEN, | : | |
| Appellant. | : | |

APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 2022 CRB 03771

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Steven Jentzen, appeals the decision of the Clermont County Municipal Court denying his motion to suppress. For the reasons discussed below, we affirm the trial court's decision.

{¶ 2} On December 5, 2022, appellant was charged by complaint with one count of abusing harmful intoxicants in violation of R.C. 2925.31(A), a misdemeanor of the first

degree. The charge arose after appellant admitted to Union Township police officers that on December 4, 2022, he had huffed a can of keyboard duster in his vehicle. Appellant pled not guilty to the charge and filed a motion to suppress "any and all oral statements made by him" to law enforcement officers. Appellant argued the statements were obtained in violation of his Fifth and Fourteenth Amendment rights to the United States Constitution and Article I, Section 10 of the Ohio Constitution as the statements were obtained while he was in custody and without *Miranda* warnings being provided.

{¶ 3} A hearing on appellant's motion was held on February 16, 2023. The trial court was presented with testimony from Union Township Police Officer Eric Disbennett and with bodycam footage of appellant's interaction with Officer Disbennett and two other officers. The evidence established that on December 4, 2022, the Union Township Police Department received two phone calls from a concerned citizen. During the first phone call, the concerned citizen reported that a driver was recklessly operating a white Cadillac in Union Township. During the second call, the concerned citizen reported that the driver of the Cadillac had pulled the vehicle over onto the side of Flick Lane, and the concerned citizen had taken the driver to a residence on Flick Lane. The concerned citizen asked that a welfare check be made on the driver, who was later identified as appellant.

{¶ 4} At approximately 7:35 p.m., Officer Disbennett, his trainee, Officer Miles, and a third officer, Officer Cooper, arrived at appellant's residence to conduct a welfare check on appellant. Appellant's mother, an owner of the residence, answered the door and invited the officers inside. As they entered, appellant appeared from the basement. Appellant announced to the officers that he had "shit [him]self." Appellant was asked to have a seat at the kitchen table. Officer Disbennett explained that the officers wanted to ensure that appellant was not in need of medical attention. They also wanted to determine what activities appellant had been engaged in.

{¶ 5} As the officers spoke with appellant, asking him what had happened, appellant's mother remained nearby, sitting at the table next to appellant. Appellant's stepfather sat in the attached living room, but walked into the kitchen during the officer's conversation with appellant. Two officers, Officers Disbennett and Miles, stood near one side of the kitchen table, while Officer Cooper stood further back and to the left of the other officers, near the walkway from the main door into the entrance of the kitchen area. Officer Disbennett was unsure if Officer Cooper stood in the only path to the entryway and main door.

{¶ 6} At the beginning of their encounter, appellant was asked for his ID. Appellant did not have his ID on him and he stood up and began to approach Officer Disbennett, who instructed appellant to "have a seat." After sitting back down, appellant informed the officers that he was having some stomach and back issues and he had tried to "self-medicate" which he knew was wrong. When asked how he tried to self-medicate, appellant initially stated he smoked cigarettes. He later stated he vaped using a Mr. Fog device. Officer Disbennett raised his voice and accused appellant of "bold face lying" when he claimed to be self-medicating with cigarettes. Approximately six minutes into the officers' interaction with appellant, Officer Disbennett questioned appellant about the two cans of aerosol dusters that he observed sitting in the living room. Appellant claimed he "didn't do anything wrong" and stood up from his chair. Appellant was instructed by Officer Disbennett and Officer Miles to sit down, which he did.

{¶ 7} Appellant's stepfather handed the officers the dusters from the living room. One of the dusters was empty and the other was full. At that time, about 7 minutes, 45 seconds into the recording, appellant makes the statement to the officers that he has two options: stay with his mother and stepfather or go with them. Officer Disbennett responded to appellant's statement by informing him that they were "not taking [him] anywhere." After

being informed that the officers were not taking him in, appellant admitted to pulling his car over and huffing one of the cans of dusters. He stated he bought three cans at Meijer and intended to huff the other two later. Officer Disbennett asked appellant if he needed to go to the hospital, to which appellant replied, "no." After determining appellant did not need medical attention, appellant was asked to accompany the officers outside to receive a citation. Appellant complied.

{¶ 8} The officers' interaction with appellant inside his home lasted approximately nine minutes. Officer Disbennett testified appellant was not advised of his *Miranda* rights during this interaction as he was not in custody. The officer further testified that appellant was not free to leave during the questioning part of the investigation.

{¶ 9} After considering Officer Disbennett's testimony and the bodycam footage, the trial court issued a decision denying appellant's motion to dismiss. The court concluded that appellant "was not subject to a custodial interrogation" and that appellant's confession to huffing the duster was voluntary.

{¶ 10} Following the denial of his motion to suppress, appellant entered a no contest plea to the charge of abusing harmful intoxicants. He was sentenced to a suspended 90-day jail term and placed on two years of community control.

{¶ 11} Appellant timely appealed, raising the following as his sole assignment of error:

{¶ 12} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS.

{¶ 13} Appellant argues the trial court erred in denying his motion to suppress as he was subject to a custodial interrogation which required that he be advised of his *Miranda* rights. Specifically, appellant contends the trial court should have suppressed any and all incriminating statements he made about self-medicating by huffing the can of duster as the

statements were made in a "police-dominated atmosphere" where his movements were restricted by verbal commands to "sit down." He further contends the officers used their concern for his well-being as a pretext to investigate whether a crime had occurred.

{¶ 14} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353, ¶ 12. "When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility." *State v. Harsh*, 12th Dist. Madison No. CA2013-07-025, 2014-Ohio-251, ¶ 9. Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038, ¶ 10. "However, an appellate court 'independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard.'" *State v. Vunda*, 12th Dist. Butler Nos. CA2012-07-130 and CA2013-07-113, 2014-Ohio-3449, ¶ 14, quoting *Cochran* at ¶ 12.

{¶ 15} "It is well-established that the 'prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *State v. Huysman*, 12th Dist. Warren No. CA2005-09-107, 2006-Ohio-2245, ¶ 13, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602 (1966). However, "[t]he issuance of *Miranda* warnings is only required when police subject a person to custodial interrogation." *State v. Huff*, 12th Dist. Butler No. CA2019-06-104, 2020-Ohio-1064, ¶ 6, citing *State v. Byrne*, 12th Dist. Butler Nos. CA2007-11-268 and CA2007-11-269, 2008-Ohio-4311, ¶ 10.

{¶ 16} "*Miranda* defines custodial interrogation as any 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" (Emphasis omitted.) *State v. Matthews*, 12th Dist. Butler No. CA2012-09-175, 2013-Ohio-3482, ¶ 10, quoting *Miranda* at 444. "A person is in custody if he is formally placed under arrest prior to a police interrogation, or, if not formally arrested, when there is a significant restraint on his freedom of movement." *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 12. The determination of whether a custodial interrogation has occurred "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *State v. Coleman*, 12th Dist. Butler No. CA2001-10-241, 2002-Ohio-2068, ¶ 24, citing *Stansbury v. California*, 511 U.S. 318, 323-324, 114 S.Ct. 1526 (1994). "In judging whether an individual has been placed into custody the test is whether, under the totality of the circumstances, a 'reasonable person would have believed that he was not free to leave.'" *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995), quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints, * * * and the release of the interviewee at the end of questioning." *State v. Woods*, 4th Dist. Lawerence Nos. 16CA28 and 16CA29, 2018-Ohio-4588, ¶ 40, citing *Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181 (2012).

{¶ 17} In the present case, evidence was presented that three officers responded to appellant's residence to do a welfare check after receiving a phone call from a concerned citizen. The three uniformed officers were invited into the residence by appellant's mother. At no point in time were the officers' weapons unholstered.

{¶ 18} The officers held a nine-minute conversation with appellant at his kitchen

table. Appellant was not placed in handcuffs for this conversation. Both appellant's mother and stepfather were present, with appellant's mother sitting next to him. During the course of the conversation, appellant voluntarily made several concerning statements – he "shit [him]self," he self-medicated for pain, and he knew what he did was wrong. The officers, while still conducting the well-being check, sought to get to the bottom of what happened and how appellant had self-medicated. In doing so, Officer Disbennett twice told appellant to stay seated and he raised his voice. However, neither Officer Disbennett nor the other two officers made any threats towards appellant, sought to physically intimidate appellant, or physically restrained appellant. Appellant was not overpowered, tricked, or coerced in any way by the officers when he was asked how he was self-medicating. *See State v. Frost*, 12th Dist. Fayette No. CA2018-11-023, 2019-Ohio-3540, ¶ 20 (defendant was not subject to a custodial interrogation where he was not handcuffed, threatened, overpowered, tricked or coerced in any way when being questioned by two police officers inside his home); *State v. Hogle*, 2d Dist. Greene No. 2014-CA-41, 2015-Ohio-2783, ¶ 28 ("[t]he mere presence of police officers does not render a suspect powerless, particularly when the suspect is within the familiar surroundings of his own home").

{¶ 19} When speaking with appellant, the officers left some distance between where they stood and where appellant sat at the kitchen table, with Officer Cooper leaving the most distance. Officer Cooper stood in the walkway between the kitchen area and the main door, though he did not appear to be barring access to the door. In fact, Officer Disbennett indicated it was possible there may have been another path to the entryway and main door. Appellant was informed by Officer Disbennett that the officers were "not taking [him] anywhere." After learning that appellant had huffed a can of duster, the officers inquired if appellant needed to go to the hospital. Once appellant said "no," the officers issued a citation and then left. Appellant was not arrested.

{¶ 20} Under the totality of these circumstances, we find that appellant was not subject to a custodial interrogation on December 4, 2022.  Contrary to appellant's assertions, the facts demonstrated that the officers were performing a welfare check when they spoke to appellant in his home.  Appellant was not taken into custody and his freedom of action was not deprived in any significant way by the officers' conduct or questioning. The trial court, therefore, did not err in denying appellant's motion to suppress.  Appellant's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

M. POWELL and BYRNE, JJ., concur.